

✓ ___ FILED      ___ ENTERED
___ LOGGED   ___ RECEIVED
1:33 pm, Apr 08 2021
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ _DG_ _____ Deputy

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

*Leah B. Grossi*
*Assistant United States Attorney*
*Leah.Grossi@usdoj.gov*

*Mailing Address:*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location:*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4235*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*

November 16, 2020

Michael March
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201

      Re:    <u>United States v. Lenore G. Worthy</u>,
             Crim. No. PWG 21—064

Dear Mr. March:

      This letter confirms the plea agreement (this "Agreement") that has been offered to your client, Lenore G. Worthy (hereinafter "Defendant"), by the Department of Justice's Tax Division and the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **5:00 p.m. on November 20, 2020**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offenses of Conviction

      1.    The Defendant agrees to plead guilty to Count One and Count Two of an Information to be filed against her, which will charge the Defendant in Count One with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, and in Count Two with Aiding and Assisting the Preparation and Filing of a False and Fraudulent Return, in violation of 26 U.S.C. § 7206(2). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offenses

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Information, in the District of Maryland—

           a.    <u>Count One (Conspiracy to Defraud the United States)</u>: (1) two or more persons entered into the unlawful agreement charged in the Information; (2) the Defendant knowingly and willfully became a member of the conspiracy; (3) one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Information; and (4) the overt act was committed to further some objective of the conspiracy.

Rev. August 2018

b.    Count Two (Aiding and Assisting in the Preparation and Filing of False Tax Returns): (1) the Defendant aided or assisted in, procured, counseled, or advised the preparation or presentation of a document in connection with a matter arising under the Internal Revenue laws; (2) the document was false as to a material matter; and (3) the act of the Defendant was willful.

Penalties

3.    The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 371 | N/A | 5 years | 3 years | $250,000 or twice the gross pecuniary gain or gross pecuniary loss of the offense | $100 |
| 2 | 26 U.S.C. § 7206(2) | N/A | 3 years | 1 year | $250,000 or twice the gross pecuniary gain or gross pecuniary loss of the offense | $100 |

a.    Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.    Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.    Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.    Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.    Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is

nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to have a grand jury consider the charges against the Defendant. The Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

       f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

       g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

       h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization.  The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty.  The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

     5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

     6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

### Count One

a.      This Office and the Defendant further agree that the applicable base offense level is **16**, pursuant to United States Sentencing Guideline ("U.S.S.G.") §§ 2X1.1 and 2T4.1, because the tax loss within the scope of the conspiracy and reasonably foreseeable to the Defendant was more than $100,000 but not more than $250,000.

b.      A **2**-level enhancement applies, pursuant to U.S.S.G. § 2T1.4(b)(1)(B), because the Defendant was in the business of preparing or assisting in the preparation of tax returns.

### Count Two

c.      This Office and the Defendant further agree that the applicable base offense level is **16**, pursuant to U.S.S.G. § 2T4.1, because the tax loss reasonably foreseeable to the Defendant was more than $100,000 but not more than $250,000.

d.      A **2**-level enhancement applies, pursuant to U.S.S.G. § 2T1.4(b)(1)(B), because the Defendant was in the business of preparing or assisting in the preparation of tax returns.

### Grouping

e.      Counts One and Two group, pursuant to § 3D1.2.

### Additional Provisions

f.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a

part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

i.     The Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an offense level of **15**; and

ii.     This Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an offense level of **15**.

       c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

11.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

### Defendant's Conduct Prior to Sentencing and Breach

12.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; will not move to withdraw from the plea of guilty or from this Agreement; and will not participate, in any way, in the business of preparing and filing tax returns, with the exception of tax returns for the Defendant or for any corporations owned by the defendant.

13.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Restitution

14.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least **$189,748**. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum

obligation. Defendant will make a good faith effort to pay any restitution.   Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time.   The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Tax Liability

15.    The Defendant understands that this Agreement does not resolve any civil tax liability that the Defendant may have, and that this Agreement is with the Department of Justice's Tax Division and the United States Attorney's Office, not with the Internal Revenue Service. The Internal Revenue Service is not a party to this Agreement and remains free to pursue any and all lawful remedies it may have.  The Defendant agrees, however, as a special condition of supervised release: (a) to execute a final and conclusive "Closing Agreement" with the Internal Revenue Service, pursuant to section 7121 of the Internal Revenue Code, in order to resolve tax liabilities for tax years 2015 through 2018; (b) to provide a complete and accurate financial statement, under penalty of perjury, to the United States that shall identify all assets valued at $1,000 or more owned or held directly or indirectly by the Defendant, as well as all such assets transferred by the Defendant to any third parties since 2015, including the location of said assets and identities of the third parties; and (c) to pay to the Internal Revenue Service all additional taxes, interest and penalties that the Internal Revenue Service may determine that the Defendant owes for the tax years 2015 through 2018, pursuant to the aforesaid Closing Agreement.

### Court Not a Party

16.    The Court is not a party to this Agreement.  The sentence to be imposed is within the sole discretion of the Court.  The Court is not bound by the Sentencing Guidelines stipulation in this Agreement.  The Court will determine the facts relevant to sentencing.  The Court is not required to accept any recommendation or stipulation of the parties.  The Court has the power to impose a sentence up to the maximum penalty allowed by law.  If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement.  Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

17.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior

Rev. August 2018

8

understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Richard E. Zuckerman
Deputy Assistant Attorney General
Tax Division

*Leah B. Grossi*  Digitally signed by LEAH GROSSI
Date: 2020.11.16 19:03:37 -05'00'

Leah B. Grossi
Assistant United States Attorney

Kathryn D. Sparks
Trial Attorney, Tax Division
Northern Criminal Enforcement Section

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/20/2020
Date

*Lenore G. Worthy*

Lenore G. Worthy

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/20/2020
Date

Michael March, Esq.

Rev. August 2018

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In 2007, Co-Conspirator 1, whose identity is known to the Government, pleaded guilty to wire fraud in connection with Co-Conspirator 1's operation of a tax return preparation business. As a result, Co-Conspirator 1 was no longer eligible for admission into the electronic tax return filing program of the Internal Revenue Service ("IRS"). Subsequent to Co-Conspirator 1's conviction, the Defendant, **LENORE GAIL WORTHY** ("**WORTHY**") applied for and received electronic tax return filing privileges from the IRS. The IRS provided **WORTHY** with unique identifiers that would allow **WORTHY** to electronically sign and submit tax returns on behalf of clients.

Subsequent to Co-Conspirator 1's release from prison, **WORTHY** agreed to allow Co-Conspirator 1 to use **WORTHY**'s unique electronic filing identifiers, in exchange for a fee of $29 per tax return. Beginning in and around at least 2012, Co-Conspirator 1 and **WORTHY** agreed to operate a business enterprise in the District of Maryland that prepared and filed false and fraudulent tax returns and that would allow Co-Conspirator 1 to misrepresent their identity on the clients' tax returns by using **WORTHY**'s identifiers to prepare and electronically file the tax returns with the IRS.

On or about August 17, 2015, the IRS expelled **WORTHY** from its electronic tax return filing program due to a criminal investigation into fraudulent tax returns filed with **WORTHY**'s unique identifiers. At that time, in the District of Maryland, Co-Conspirator 3, whose identity is known to the Government, was also a participant in the IRS's electronic tax return filing program and possessed her own unique electronic filing identifiers. Co-Conspirator 3 agreed to allow Co-Conspirator 1 and **WORTHY** to use Co-Conspirator 3's identifiers in exchange for the use of Co-Conspirator 1 and **WORTHY**'s shared office space in Temple Hills, Maryland. Co-Conspirator 1 and **WORTHY** misrepresented their identities on their clients' tax returns by using Co-Conspirator 3's identifiers to prepare and electronically file the tax returns with the IRS. Co-Conspirator 3 also joined in **WORTHY** and Co-Conspirator 1's practice of falsifying tax returns and fraudulently claiming refunds. Specifically, Co-Conspirator 1, Co-Conspirator 3, and **WORTHY** falsified tax returns by: (1) fabricating, inflating, and improperly claiming items on the Schedules A that were attached to clients' IRS Forms 1040, U.S. Individual Income Tax Returns (hereinafter "Forms 1040"); and (2) engineering business losses on the Schedules C that were attached to clients' Forms 1040 by fabricating, inflating, and improperly claiming purported business expenses. As a result, Co-Conspirator 1, Co-Conspirator 3, and **WORTHY** artificially lowered their clients' taxable income, which fraudulently lowered the taxes that the clients owed to the IRS and inflated their refunds.

Rev. August 2018

On or about December 15, 2017, the IRS expelled Co-Conspirator 3 from its electronic tax return filing program, due to a criminal investigation into fraudulent tax returns filed with Co-Conspirator 3's unique identifiers. Thereafter, Co-Conspirator 3 made misrepresentations about the criminal nature of her issues with the IRS to a third-party electronic return originator ("ERO") in order to obtain their assistance. The ERO allowed Co-Conspirator 3 to file tax returns using its unique electronic filing identifiers, and Co-Conspirator 3 shared those identifiers with Co-Conspirator 1 and **WORTHY**. Using the new identifiers, the co-conspirators, including **WORTHY**, continued to prepare and file false and fraudulent returns through at least the 2019 tax filing season, which ended in or about April 2019.

Among the false and fraudulent tax returns filed by **WORTHY** was a 2014 Form 1040 on behalf of an IRS agent acting in an undercover capacity as a purported client. On that return, **WORTHY**, having initially calculated that the purported client would owe taxes for 2014, altered the return by adding fabricated business expenses totaling $21,787. By fabricating the purported client's business expenses, **WORTHY** artificially lowered the purported client's total income by over 40 percent, which ultimately allowed the purported client to claim a refund from the IRS of $4,499.

In total, the tax loss caused to the IRS as a direct result of Co-Conspirator 1, Co-Conspirator 3, and **WORTHY**'s conspiracy for the tax years 2012 through 2018 was $189,748.

SO STIPULATED:

Digitally signed by
LEAH GROSSI
Date: 2020.11.16
19:03:59 -05'00'

Leah B. Grossi
Assistant United States Attorney

Kathryn D. Sparks
Trail Attorney
Tax Division
Northern Criminal Enforcement Section

Lenore G. Worthy
Defendant

Michael March, Esq.
Counsel for Defendant

Rev. August 2018